UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO: 3:05 CV 520

| | |
|---|---|
| GLENNA SHELTON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE CHARLOTTE-MECKLENBURG | ) |
| HOSPITAL AUTHORITY, dba | ) |
| CAROLINAS HEALTHCARE | ) |
| SYSTEM, dba CAROLINAS MEDICAL | ) |
| CENTER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant The Charlotte-Mecklenburg Hospital Authority, d/b/a Carolinas Healthcare System, d/b/a Carolinas Medical Center (hereinafter "Carolinas Healthcare," "CMHA" or "Defendant"), pursuant to Federal Rule of Civil Procedure 56, and states the following in support of its Motion for Summary Judgment:

### **I. STATEMENT OF FACTS**

The Charlotte-Mecklenburg Hospital Authority ("CMHA") hired Plaintiff as a temporary staff assistant in the Information Services Department on July 9, 2001. Pl. Dep. at 51-52; Pl. Dep. Ex. 5. On October 1, 2001, Plaintiff applied and was hired for a permanent Secretary III position in Materials Management. Pl. Dep. at 53-54; Pl. Dep. Ex. 6. Plaintiff sought a transfer to the Security Department in July 2002 and was

eventually hired as a Staff Assistant. Pl. Dep. at 81; Pl. Dep.Ex. 9. Within weeks of her hiring, Major Steven Curtis became Plaintiff's direct supervisor. *Id*.

### A. *Plaintiff's intermittent leave of absence.*

On May 29, 2003, Plaintiff applied for and went on FMLA leave for gall bladder surgery. Pl. Dep. at 88-89. Approximately one month later, Plaintiff returned to her pre-FMLA position and Plaintiff "went right back to the way everything was." *Id*. at 92-95. Plaintiff further testified that she had no physical limitations or restrictions upon her return from FMLA leave. *Id*. at 93. In total, Plaintiff used approximately 120 hours of FMLA leave as a result of her gall bladder surgery. *Id*. at 88-89.

Following her return to work, on August 18, 2004, Plaintiff sought to transfer from her position in the Security Department to another position within the CMHA system. *Id*. at 96-100; Pl. Dep. Ex. 10. Major Curtis discussed the transfer with Plaintiff and agreed to support Plaintiff's attempt to transfer. *Id*. However, Plaintiff was not ultimately successful in transferring to the other position. *Id*.

Unfortunately, in October 2003, Plaintiff was diagnosed with breast cancer. *Id*. at 101. According to Plaintiff, she discussed her treatment with Major Curtis and explained that she would need to be out on intermittent leave. *Id*. at 101-103. Plaintiff provided Major Curtis with a schedule of her treatment. *Id*. Throughout the course of her treatment, Plaintiff used Major Curtis and his wife as a "support system," due to their own previous experiences dealing with cancer. Curtis Dep. at 71-74.

Additionally, Major Curtis hired a temporary employee to handle Plaintiff's receptionist duties at his office when Plaintiff told him of her diagnosis. *Id*. at 71-74 and 82-83; Curtis Dep. Ex. 49. Plaintiff was also moved to a room away from the front door

2

so she would not need to interact with the public. *Id*. Major Curtis also delegated a number of Plaintiff responsibilities to other employees in the Security Department. *Id*.

Pursuant to CMHA policy, Plaintiff also attempted to complete the necessary paperwork for taking intermittent FMLA leave. Pl. Dep. at 106; Covington Dep. Ex. 66; Curtis Dep. Ex. 47. By letter dated December 2, 2003, CMHA informed Plaintiff that, in spite of CMHA's policy, no doctor's note had been provided verifying Plaintiff's requested leave. Pl. Dep. Ex. 12. CMHA subsequently approved Plaintiff's leave on December 17, 2003, although no note from Plaintiff's physician was received. Pl. Dep. Ex. 13. At the same time, CMHA informed Plaintiff by letter that she had 344 remaining hours of FMLA time as of November 25, 2003. *Id*.

Plaintiff went on intermittent FMLA leave during the week beginning December 14, 2003. Pl. Dep. Ex. 35. Her intermittent leave continued through the week ending April 17, 2004. *Id*.

On January 16, 2004, Plaintiff received another letter from CMHA requesting a physician's note pursuant to policy and representing that Plaintiff had 344 hours of FMLA time remaining as of December 1, 2003. Pl. Dep. Ex. 14. In response to the letter, Plaintiff contacted Jackie Wilson, HR Operations/Benefits, to discuss her FMLA leave. Pl. Dep. at 113-114. Plaintiff testified in her deposition that Ms. Wilson informed her that CMHA had not received a note from Plaintiff's physician regarding Plaintiff's leave. *Id*. Plaintiff assigned blame for the failure to provide a physician's note on her doctor's office. *Id*.

Finally, on March 2, 2004, Plaintiff's doctor provided a note verifying that Plaintiff would be on intermittent leave beginning December 15, 2003. Pl. Dep. Exs. 15

& 16. CMHA's Employee Health Department initially denied the request for leave because Plaintiff failed to provide a physician's note within fifteen (15) days from the beginning of the requested leave, as required by CMHA policy. Pl. Dep. Ex. 17; Curtis Dep. Ex. 47; Covington Dep. Ex. 66. On March 29, 2004, Ms. Wilson sent Plaintiff a letter indicating that Plaintiff's request for leave was denied due to her failure to provide a physician's note in a timely fashion.[1] *Id*.

In total, Plaintiff used an additional 302.5 FMLA hours during the period beginning December 21, 2003, and ending April 2, 2004. Pl. Dep. Ex. 35; Curtis Dep. Ex. 48.

### B. *Plaintiff's continuous leave of absence.*

Plaintiff then contacted her physician's office and received another note on April 6, 2004, indicating that she needed to be on continuous leave beginning April 5, 2004 through August 2004.[2] Pl. Dep. at 128; Pl. Dep. Ex. 18. Plaintiff's physician indicated that Plaintiff would be "totally disabled" during the relevant period. *Id*. Beginning April 5, 2004, Plaintiff missed an additional 104 hours of work.[3] Exceeding her allotted FMLA hours, Plaintiff was terminated from her position in the Security Department on April 21, 2004. Pl. Dep. Ex. 21; Curtis Dep. Ex. 61. However, Plaintiff remained an active employee in the CMHA system, receiving short term disability benefits and health care coverage. Pl. Dep. at 137.

---

[1] Plaintiff's counsel may seek to make an issue of the written denial of Plaintiff's intermittent leave. However, either the leave hours are counted toward the FMLA calculation or Plaintiff should have been terminated for unexcused absences. In either case, there is clearly no violation of the ADA due to Plaintiff's negligence in submitting a doctor's note and the subsequent leeway provided by the Hospital.

[2] Plaintiff's physician submitted another letter on May 4, 2004, projecting that Plaintiff would need to be on continuous leave until August 1, 2004. Pl. Dep. Ex. 27.

[3] There were 20 working days remaining in April 2004 when Plaintiff went on continuous leave.

Plaintiff's former position in the Security Department was then publicly posted and eventually filled. Curtis Dep. Ex. 59; Pl. Dep. at 159.

### C.     *Attempts to find suitable employment for Plaintiff within CMHA.*

Plaintiff claims that she met with Major Curtis on June 7, 2004, to discuss the status of her previous position. Pl. Dep. at 140. According to Plaintiff, Major Curtis told her that her previous position was posted because Plaintiff had exhausted her FMLA leave time. Pl. Dep. at 140-141. Plaintiff also claims that she told Major Curtis during the meeting that she may be able to return prior to August, although she admits that her physician had not cleared her to return. Pl. Dep. at 140. Major Curtis referred Plaintiff to Dana Voss so that Plaintiff could apply for her previous position. Pl. Dep. at 141.

According to the handwritten notes provided by Plaintiff, she spoke with Dana Voss later that same day. Pl. Dep. at 150-151. Plaintiff claims that she spoke with Ms. Voss again on June 18, 2004. *Id*. According to Plaintiff, Ms. Voss indicated that Plaintiff could not apply for her previous position because Plaintiff's physician had not released her to return to work and Major Curtis did not want any applicants with restrictions. Pl. Dep. at 146-147, 152. Ms. Voss then offered to assist Plaintiff in locating another position within CMHA and referred Plaintiff to Vondra Love in the Return to Work program. Pl. Dep. at 165

On June 24, 2004, Plaintiff's physician released her to return to work without any restrictions on July 1, 2004. Pl. Dep. Ex. 24. As such, Plaintiff contacted Vondra Love on June 29, 2004, to discuss other positions within the CMHA system. Pl. Dep. at 166. Plaintiff was informed that Ms. Love would work with her for sixty (60) days to find suitable employment. Pl. Dep. at 167. Ms. Love instructed Plaintiff to fill out an online

5

application and identify jobs which Plaintiff wanted to pursue. Pl. Dep. at 167-168. Plaintiff also alleges that Ms. Love did not permit Plaintiff's request to work in temporary services. Pl. Dep. at 168.

By all accounts, Plaintiff and Vondra Love communicated on an almost daily basis for the next month in an attempt to locate suitable employment for Plaintiff. Pl. Dep. Ex. 25. Notably, Plaintiff had absolutely no medical restrictions which affected which positions she was seeking. Pl. Dep. Ex. 24. Plaintiff and Ms. Love identified 16 positions, submitting Plaintiff's application and resume to each. Eventually, Plaintiff received interviews for six (6) positions. Pl. Dep. at 188-201. In addition to the interviews, Plaintiff performed testing to determine if she had any skills which would make her eligible for other positions; due to Plaintiff's low scores, a second round of testing was arranged.[4] Pl. Dep. at 193-194.

Plaintiff first interviewed for a staff assistant position in the IS department on July 16, 2004. Pl. Dep. at 185-188.

On July 27, 2004, Plaintiff met with Donna Lockhart and Steve Wilhoit about a receptionist position for both the Corporate and Community Relations and Legal departments. Pl. Dep. at 190-191.

Next, Plaintiff interviewed with a panel for a Secretary III position at the College of Health Sciences on August 12, 2004. Pl. Dep. at 195.

Six days later, Plaintiff interviewed for a Secretary III position in Physician Recruitment. Pl. Dep. at 197-198. It should be noted that, at the same time Plaintiff was working with CMHA's Return to Work Department, she was also interviewing with

---

[4] It was also requested that Plaintiff perform a third set of tests, but Plaintiff admittedly refused. *Id*. at 193-194.

Specialty Manufacturing, whom she accepted a position with on August 16, 2004. Pl. Dep. at 201; Pl. Interrogatory Response 3, Ex. B.

On September 8, 2004, Plaintiff met with Vondra Love. Pl. Dep. Ex. 21. Ms. Love informed Plaintiff that she would be terminated on September 10th, following the expiration of the sixty (60) day period in the Return to Work program. *Id*.; Pl. Dep. at 202. Ms. Love offered to continue to follow up on positions for which Plaintiff previously applied. Plaintiff requested information on unemployment benefits. Pl. Dep. at 202.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on September 17, 2004. Pl. Dep. at 206-207; Pl. Dep. Ex. 29.

In spite of Plaintiff's termination, she received two additional interviews. First, she met with Eva McNeil regarding a Secretary III position with EAP on October 7, 2004. Pl. Dep. at 209-215. Additionally, Plaintiff interviewed for a Secretary III position with Behavioral Health. *Id*. Plaintiff refused to interview a second time for the position, citing the distance to the Huntersville facility. Pl. Dep. at 203.

With no further job prospects remaining, Plaintiff was removed from the payroll on November 30, 2004. Pl. Dep. at 203.

In December 2004, Plaintiff moved back to Tennessee to live with family members. Pl. Dep. at 222-223. According to Plaintiff, she returned to work in late January 2005 for RWE Newcomb. Pl. Dep. at 225. Plaintiff became an HR Assistant earning $13.00 per hour. *Id*. Plaintiff later left the position at RWE for a job with BWXTY12, where she is currently employed as a front desk receptionist earning $16.25 per hour. Pl. Dep. at 229-230.

## II. STATEMENT OF THE CASE

Plaintiff filed the lawsuit at bar alleging that CMHA failed to accommodate her and subsequently terminated her in violation of the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq. ("ADA"). The parties have engaged in extensive discovery and, pursuant to the Court's Order, discovery is now closed. As such, and with CMHA entitled to dismissal of each of Plaintiff's claims as a matter of law, CMHA now files its Motion for Summary Judgment.

## III. ARGUMENT

### A. *Summary of Argument*

Plaintiff is simply unable to show any violation of the ADA by CMHA as a matter of law. First, based on analogous legal authority, Plaintiff is unable to establish that she was "disabled," "regarded as disabled," or had "a record of a disability" as required to receive ADA protection. Second, even if Plaintiff was legally "disabled," which is expressly denied, it is clear that Plaintiff was not a "qualified individual with a disability," another prerequisite for asserting a valid claim under the ADA. Finally, even if Plaintiff was covered by the ADA, CMHA satisfied any obligations it had to present Plaintiff with reasonable accommodations without placing an undue burden on CMHA.

### B. *Summary Judgment Standard*

"Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery and the record reveal that 'there is no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law'." *Lynch v. Ikon Office Solutions, Inc.*, 2005 U.S. Dist. LEXIS 19767, *13-14 (WDNC 2005)(citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.

1979).) "Once the movant has met its burden, the non moving party must come forward with specific facts demonstrating a genuine issue for trial." *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).)

"A genuine issue for trial exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party'." *Id*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).) "However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a 'mere scintilla of evidence' is insufficient to overcome summary judgment." *Id*. (quoting *Anderson*, 477 U.S. at 249-50.).

**C.     ADA Standard**

To establish a prima facie case of discrimination under the ADA, Plaintiff must establish, "(1) that she has a disability, (2) that she is a qualified individual, and (3) [CMHA] discharged her because of her disability." *Tozzi v. Advanced Medical Management, Inc*., 2001 U.S. Dist. LEXIS 17910, *9; 12 Am. Disabilities Cas. (BNA) 296 (D.Md. 2001)(citing *E.E.O.C. v. Stowe-Pharr Mills, Inc*., 216 F.3d 373, 377 (4th Cir. 2000).) A "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Id*. (quoting 42 U.S.C.A. § 12102(2).)

**D.     *Plaintiff fails to show that she was actually disabled.***

Plaintiff's temporary treatment for breast cancer and any resulting effects do not constitute a disability under the ADA. Failing to establish the most basic requirement of

the Act – namely, a legally cognizable disability – Plaintiff's Complaint should be dismissed.

"A claim for unlawful termination and a claim for failure to make a reasonable accommodation under the ADA both require a showing that Plaintiff was 'disabled' within the meaning of the ADA." *Lochridge v. City of Winston-Salem*, 388 F. Supp. 2d 618, 625 (MDNC 2005). Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). More specifically, an individual claiming ADA protection must show that their impairment "'prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives,' and that the impact of the impairment is permanent or long term." *Lochridge,* 388 F. Supp. 2d at 626. (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002).)

"It is well-established that the ADA requires an individualized inquiry into whether a person is disabled." *Tozzi,* 2001 U.S. Dist. LEXIS at *10-11. (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478, 483 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999); *Runnebaum v. Nationsbank of Maryland, N.A.*, 123 F.3d 156, 170 (4th Cir. 1997), overruled on other grounds, *Bragdon v. Abbott*, 524 U.S. 624, 141 L. Ed. 2d 540, 118 S. Ct. 2196 (1988).) As such, to obtain relief under the ADA based on an actual disability, Plaintiff "must show that her cancer and the resulting effects substantially limited a major life activity at the time of the alleged discriminatory act…" *Tozzi*, 2001 U.S. Dist. LEXIS at *10-11.

"An individual is not disabled under the [ADA] if he or she suffers from a temporary medical condition, even if the condition requires an extended leave of absence from work." *Tozzi,* 2001 U.S. Dist. LEXIS at *16. (breast cancer patient who underwent bilateral mastectomies and excessive reconstructive surgery found not actually disabled under the ADA due to the temporary nature of her impairment)(citing *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 199 (4th Cir. 1997)(concluding that seven month recovery from cerebral hemorrhage that impaired plaintiff's ability to work was of too short a duration to be "substantially limiting"); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 646 (2nd Cir. 1998)).

Moreover, "…inability to perform certain major life activities while recovering from surgery does not constitute a disability where the recovery period is of a limited duration, and an eventual return to normal functioning occurs." *Tozzi*, 2001 U.S. Dist. LEXIS at *16-17. (citing *Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir. 1997)(holding the plaintiff's year long recovery from back surgery did not substantially limit the major life activity of working); *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1360 (S.D.Fla. 1999)(holding that physical limitations for a five month period following reconstructive surgery did not constitute a disability; also see, *Farrish v. Carolina Commercial Heat Treating, Inc.*, 225 F. Supp. 2d 632 (MDNC 2002).)

In this case, Plaintiff is simply unable to establish that she was actually disabled as defined by the ADA. As Plaintiff admits in her Complaint, she was only temporarily limited for the period beginning in April 2004 and ending in June 2004, while she was recovering from cancer treatment. Dkt. Entry 1 at ¶ 9. Plaintiff reiterated the temporary

11

nature of her impairment in response to written discovery, while also attempting to expand the timeframe she alleged in her Complaint:

> At least between January 2004 and early June 2004, the side effects of chemotherapy substantially affected one or more daily activities to the point that Plaintiff was substantially limited in her ability to care for herself, to work, to associate with others, or indulge in leisure activities. Even before December 15, and early April, prior to going on leave, she was substantially limited in her ability to associate with others, and had been hospitalized at least once.[5]

Pl.'s Response to Interrogatories, No. 1.

In keeping with *Tozzi*, Plaintiff's inability to perform these activities over a limited period of time while recovering from chemotherapy does not constitute a disability. *Tozzi*, 2001 U.S. Dist. LEXIS at *16-17.

Thereafter, Plaintiff's physician released her to return to work on July 1, 2004, with absolutely no restrictions, a fact that Plaintiff admitted in her deposition.[6] Pl. Dep. at 270-71; Pl. Dep. Ex. 24. Reflecting that fact, at no point during Plaintiff's interactions with Vondra Love or any potential employers at CMHA did Plaintiff limit the jobs that were available to her based on any supposed restrictions. *Id*. As a result, there is no evidence, and Plaintiff does not allege, that she was in any way limited in her activities beginning on July 1, 2004. *Id*.

As such, there appears to be little question that Plaintiff's condition, while unfortunate, flatly fails to rise to the level of an actual disability under the ADA. Plaintiff's condition is analogous, at best, to the plaintiffs in the *Tozzi* and *Farrish*

---

[5] Plaintiff also cites to physician certifications and syncope during the same time period in support of her allegation that she was actually disabled. Pl. Interrogatory Response No. 1.

[6] Notably, the plaintiff's in both *Tozzi* and *Farrish* were also released by their physicians without restrictions, a fact observed by both Courts. *Tozzi*, 2001 U.S. Dist. LEXIS at *16; *Farrish*, 225 F.Supp. 2d at 636.

decisions, both of which were dismissed on identical grounds at summary judgment. Consequently, Plaintiff's claims under the ADA fail as a matter of law.

### E. *Plaintiff was not regarded as disabled under the ADA.*

Likewise, Plaintiff's allegation that she was regarded as disabled by CMHA is without merit and subject to dismissal. To prove that she was "regarded as" disabled under the ADA, Plaintiff must show that:

> (1) [A] covered entity mistakenly believes that the plaintiff has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non limiting impairment substantially limits one or more major life activities.

*Farrish v. Carolina Commercial Heat Treating, Inc.*, 225 F. Supp. 2d 632, 636 (MDNC 2002)(citing *Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696, 703 (4th Cir. 2001)). "The fact that a covered entity employer is aware of an employee's impairment, without more, is insufficient to demonstrate that the employer regarded the employee as disabled." *Id*.

Plaintiff was released to work on July 1, 2004, without any restrictions. Pl. Dep. at 270-71; Pl. Dep. Ex. 24. Similarly, in *Farrish*, the plaintiff was treated for breast cancer but subsequently released to work without restrictions. *Farrish*, supra. The *Farrish* Court noted the lack of restrictions in addressing the regarded as argument, ultimately concluding that, "[t]he Defendant knew of the impairment, but did not treat it as a disability. Therefore, the Plaintiff fails to present any evidence that the Defendant regarded her as disabled." *Id*. (Also see, *Tozzi*, at 17952-55)("…Ms. Tozzi must introduce evidence that AMM regarded her cancer and the resulting effects as a permanent or long-term impairment that substantially limits a major life activity.").

13

Likewise, in the present suit, Plaintiff, returning without restrictions, was not substantially limited, or limited at all, by restrictions while searching for employment within CMHA. Such evidence affirmatively rebuts the implication that CMHA regarded Plaintiff as disabled.

**F.** ***Plaintiff does not have a sufficient record of impairment to qualify for ADA protection.***

Finally, Plaintiff attempts to establish ADA protection by alleging that she had a "record of impairment." In order to satisfy the ADA's definition of a disability by establishing a record of impairment, Plaintiff must show that, "the impairment in the record must be an impairment that would substantially limit one or more of the individual's major life activities." *Tozzi*, 2001 U.S. Dist. LEXIS 17947-48 (citing 29 C.F.R. pt. 1630 App., § 1630.2(k)). As stated above, Plaintiff is unable to make such a showing.

Again, the *Tozzi* Court offers specific guidance in determining whether Plaintiff is able to establish a record of impairment under the ADA. The plaintiff in *Tozzi* argued that her hospitalization for breast cancer created a record of impairment. *Id*. The *Tozzi* Court disagreed:

> …[M]ere hospitalization does not create a record of impairment necessary to satisfy [the ADA]. Rather, a plaintiff must show that the condition for which he or she was hospitalized substantially limited a major life activity. Ms. Tozzi cannot satisfy this requirement, because any limitations on her ability to engage in one or more major life activities as a result of her cancer and the resulting effects were…temporary.

*Id*.

Much like the plaintiff in *Tozzi*, Plaintiff is unable to establish a record of impairment under the ADA because her breast cancer was also a temporary condition. Due to the temporary nature, Plaintiff is unable to show that she was substantially limited

in any major life activity. Thus, Plaintiff's claim that she had a record of impairment fails as a matter of law.

### G.      During the relevant time period, Plaintiff was not a qualified individual pursuant to the ADA.

Even if Plaintiff could prove that she was disabled under the ADA, which she cannot, she was not a "qualified individual" at the time of her termination. In order to prove that she was a "qualified individual" under the ADA, Plaintiff must prove that she was able to perform the essential functions of her employment: "The ADA defines a qualified person as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds…." *Farrish*, 225 F. Supp. 2d at 636 (citing 42 U.S.C. § 12111(8).) Courts have consistently held that attendance is an essential function of most jobs:

> Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee "who does not come to work cannot perform *any* of his job functions, essential or otherwise." An employee who cannot meet the attendance requirements of the job at issue cannot be considered a "qualified" individual protected by the ADA.

*Lochridge*, 388 F. Supp. 2d at 628. (quoting *Tyndall v. National Educ. Ctrs*., Inc., 31 F.3d 209, 213 (4th Cir. 1994)(citations omitted)(emphasis in original), construed in *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 279 (4th Cir. 2004)).

Plaintiff, unable to work for over two months following the expiration of her FMLA leave, cannot establish that she was a qualified individual under the ADA during that period. Plaintiff testified that her position in the Security Department required her to sit in the reception area to greet incoming visitors, take notes at department meetings and filing around the office. Pl. Dep. at 259-60. Clearly, these duties would have required Plaintiff to be present at the office. However, also based on Plaintiff's own testimony, and her physician's note, she was completely restricted from working in any capacity

during the period beginning in April 2004 through June 2004. Pl. Dep. at 270-71; Pl. Dep. Ex. 24.

As such, Plaintiff was unable to perform an essential function of her position with CMHA – attendance. Therefore, she was not a qualified individual with a disability at the time of her discharge.

**H.    *In spite of the fact Plaintiff was not disabled pursuant to the ADA, CMHA satisfied its duty to provide reasonable accommodations.***

Assuming, *arguendo*, that Plaintiff could show that she was disabled and a qualified individual under the ADA, CMHA satisfied its duty to offer Plaintiff reasonable accommodations. According to the Fourth Circuit:

> A failure to accommodate claim under the ADA requires that the plaintiff establish: (1) that she was an individual with a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations.

*Farrish*, 225 F. Supp. 2d 637 (citing *Rhoads v. Federal Deposit Insurance Corp.*, 257 F.3d 373, 387 (4th Cir. 2001)).

Generally, employers are not required to provide accommodations which cause the employer undue hardship. *Farrish*, 225 F. Supp. 2d 637. Courts have specifically held that employers are not required to accommodate employees by allowing them to work only when their illness permits. *Walders v. Garrett*, 765 F. Supp. 303, 313 (E.D.Va. 1991).

It appears that Plaintiff will contend that CMHA failed in its alleged duty to accommodate her because she was not returned to her previous position or given a similar position upon her return to work. Plaintiff is confused about an employer's duty to accommodate in the Fourth Circuit:

16

> …it is well-settled in this Circuit that an employer is not obligated to offer reassignment to another job to a person covered by the ADA.

*Odessey v. Comcast Cablevision of Maryland*, L.P., 1998 U.S. Dist. LEXIS 21946 (D.C. Md. 1998)(citing *Carter v. Tisch*, 822 F.2d 465, 467 (4th Cir. 1987)).

Put another way, "…if an employer offers another job, that might constitute an adequate accommodation, but it does not mean that the employer is obligated to make such an offer." *Odessey*, 1998 U.S. Dist. LEXIS at 21949. (construing *Williams v. Channel Master*, 101 F.3d 346, 350 (4th Cir. 1996)).

Plaintiff also fails to note the countless ways CMHA did attempt to accommodate Plaintiff's impairment, despite being under no legal obligation to do so. First, as Plaintiff admits, the Security Department hired a substitute to handle Plaintiff's duties prior to and during Plaintiff's continuous leave. Pl. Dep. at 71-74 and 82-83; Curtis Dep. Ex. 49. Next, after Plaintiff exhausted her 12 weeks of FMLA time, Plaintiff was permitted to remain an active employee at CMHA, retaining her health care benefits and short term disability. Pl. Dep. at 137; Pl. Dep. Ex. 21; Curtis Dep. Ex. 61. Courts have found that providing more FMLA leave than required can be evidence of an accommodation. *Farrish*, 225 F. Supp. 2d at 637. Finally, Plaintiff clearly failed to provide timely doctor's notes in direct violation of CMHA's FMLA policy, yet was afforded every possible benefit under the FMLA, and more. See, *Lochridge*, 388 F. Supp. 2d at 628-30.

When Plaintiff did return to work, admittedly after her leave expired, and again with no requirement to do so, CMHA had Plaintiff work with Vondra Love to identify and organize interviews throughout the CMHA system. Pl. Dep. at pp. 160-202; Pl. Dep. Ex. 25. Ms. Love arranged six (6) interviews for Plaintiff, assisted Plaintiff in identifying positions, repeatedly tested Plaintiff in hopes additional opportunities would arise based

on Plaintiff's skills and personally followed up on every potential job lead she or Plaintiff identified. Pl. Dep. at pp. 160-202; Pl. Dep. Ex. 25. In spite of the fact that Ms. Love works with most employees for a maximum of 60 days, as Plaintiff acknowledged, an exception was made for Plaintiff as Ms. Love continued to follow up on opportunities for Plaintiff beyond the 60 day period. Pl. Dep. at pp. 202-203.

In short, through Ms. Love's efforts, the hiring of a substitute for Plaintiff in the Security Department and affording Plaintiff two (2) months of unexcused absences, CMHA satisfied any and all duties required of it through the interactive process. In spite of Plaintiff's protestations to the contrary, disabled individuals are entitled to an accommodation, not a job offer.

## IV. CONCLUSION

Based on the foregoing legal authorities and evidence, CMHA requests that Plaintiff's Complaint be dismissed with prejudice and that CMHA be awarded reasonable costs and attorneys' fees for defending this frivolous action.

This the 30th day of October 2006.

McGuireWoods LLP

By: s/Kimberly Q. Cacheris
 Kimberly Q. Cacheris (NCSB #20087)
 kcacheris@mcguirewoods.com
By: s/Benjamin R. Holland
 Benjamin R. Holland (NCSB #28580)
 bholland@mcguirewoods.com
 100 North Tryon Street
 2900 Bank of America Corporate Center
 Charlotte, North Carolina 28202
 Tel.: 704.373.8999; Fax: 704.373.8935

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel for Plaintiff:

        Vicki Brown Rowan, Esquire
        1515 Mockingbird Lane, Suite 400
        Charlotte, North Carolina 28209
        Attorney for Plaintiff

        s/Benjamin R. Holland